SHAW, Justice.
We review a Public Service Commission (PSC) order relating to rates or services of utilities. Art. V, § 3(b)(2), Fla. Const.
The issue before us involves amendments which PSC has made to rules 25-17.088(2) and (4), Florida Administrative Code (FAC), concerning PSC authority to regulate the terms and conditions for the transmission of cogenerated electric power.
Section 366.05(9), Florida Statutes (1985), authorizes PSC to establish guidelines relating to the purchase of power or energy by public utilities from cogenerators or small power producers, designated as qualified facilities (QFs) under federal and state law. The PSC also has
jurisdiction over the planning, development, and maintenance of a coordinated electric power grid throughout Florida to assure an adequate and reliable source of energy for operational and emergency purposes in Florida and the avoidance of further uneconomic duplication of generation, transmission, and distribution facilities.
§ 366.04(3), Fla.Stat. (1985). Further,
To assure efficient and reliable operation of a state energy grid, the commission shall have the power to require any electric utility to transmit electrical energy over its transmission lines from one utility to another or as a part of the total energy supply of the entire grid, subject to the provisions hereof.
§ 366.055(3), Fla.Stat. (1985).
The parties agree that investor-owned utilities are required to purchase electricity from QFs in their service areas and to furnish transmission service (“wheeling”) for QF produced electricity to any utility in the state power grid. Public Utility Regulatory Policies Act of 1978, Public Law 95-617, 92 Stat. 3117, § 210; Rules 25-17.-082 and 25-17.088(1), FAC; Nuclear Regulatory Commission license for FPL’s St. Lucie Unit No. 2. The parties also agree that the rates for providing wheeling services for QF produced power are set by the Federal Energy Regulatory Commission (FERC). 29 FERC 61,140, Oct. 31, 1984. Appellant advises us that it is pursuing a separate federal claim that FERC, not PSC, exercise control of the terms and conditions for providing wheeling services. The FERC has issued a recent declaratory order which is still unpublished and subject to appeal, holding that FERC does control the terms and conditions for wheeling services, thus preempting PSC regulation. The narrow question for us is whether PSC is authorized under state law to set these terms and conditions. We recognize that the preemption doctrine may render our deliberations moot if the FERC declaratory order is upheld, but, at the urging of both parties and because our decision may impact on further federal consideration of this dispute, we elect to answer the question before us. For the reasons which follow, we hold that PSC is authorized under state law to regulate the terms and conditions for wheeling QF produced power.
Appellant presents several arguments in support of its position that sections 366.-04(3), 366.05(9), and 366.055(3) do not authorize PSC to set the terms and conditions for wheeling QF produced power. These arguments boil down to two assertions: (1) sections 366.04(3) and 366.055(3) were enacted as part of the Grid Bill in 1974, before the development of QF produced power, and the legislature could not have contemplated the wheeling of QF power; and (2) section 366.05(9) only addresses the purchase of QF produced power, it could have but did not address wheeling. These arguments are unpersuasive. The purpose of the Grid Bill is to ensure that all electric power within the state grid is available where and when needed. Sections 366.-04(3) and 366.055(3) authorize PSC to regulate the transmission of that power. The method of generating that power, whether oil, coal, nuclear, or QF, is irrelevant. Power produced by a QF becomes a part of the total energy supply of the entire grid which must be available where needed. To accept the appellant’s reading would be contrary to the plain language of the statutes and would frustrate the legislative purpose. Concerning section 366.05(9), the PSC is authorized to establish guidelines relating to the purchase by utilities of QF *262 produced power. Although these purchases will ordinarily be made by the utility serving the area where the QF is located, nothing in the statute limits such sales to utilities serving the QF’s area. If a QF and a distant utility wish to contract for sale of QF produced power, and are prepared to pay for the wheeling services and the transmission losses involved in distant transmissions, there is no statutory prohibition against PSC regulating such sales and transmissions. On this point, appellant questions the economic wisdom of such transactions when a statewide market already exists through direct sale to the utility in the QF’s area. Appellant’s point may be well taken, arguendo, but the wisdom of PSC’s action is not our concern. We are persuaded that PSC has the statutory authority to take the action embodied in its amendments to rule 25-17.088 and so hold.
We affirm the order below.
It is so ordered.
McDonald, C.J., and OVERTON, EHRLICH, BARKETT, GRIMES and KOGAN, JJ., concur.